UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY WAYNE COLLINS,                    Case No. 10-15000

          Plaintiff,                         Victoria A. Roberts
v.                                        United States District Judge

COMMISSIONER OF SOCIAL SECURITY,          Michael Hluchaniuk
                                          United States Magistrate Judge

          Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 25, 26)**

## I.     PROCEDURAL HISTORY

    A.     Proceedings in this Court

On December 16, 2010, plaintiff filed the instant suit seeking judicial

review of the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Victoria A. Roberts referred this matter to the undersigned for the purpose of

reviewing the Commissioner's decision denying plaintiff's claim for a period of

disability, disability insurance and supplemental security income benefits.  (Dkt.

3).  This matter is before the Court on the parties' cross-motions for summary

judgment.  (Dkt. 25, 26).

B.    Administrative Proceedings

Plaintiff filed the instant claims on August 23, 2006, alleging that he became unable to work on November 2, 2005.[1]  (Dkt. 8-6, Pg ID 239).  The claim was initially disapproved by the Commissioner on December 6, 2006.  (Dkt. 8-5, Pg ID 202-206).  Plaintiff requested a hearing and on September 2, 2009, plaintiff appeared with counsel before Administrative Law Judge (ALJ) Gail Reich, who considered the case *de novo*.  In a decision dated September 21, 2009, the ALJ found that plaintiff was not disabled.  (Dkt. 8-2, Pg ID 25-38).  Plaintiff requested a review of this decision on November 21, 2009.  (Dkt. 8-2, Pg ID 23-24).  The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits (Dkt. 8-2, Pg ID 21-22), the Appeals Council, on October 22, 2010, denied plaintiff's request for review.  (Dkt. 8-2, Pg ID 18-20); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1]  The disability onset date was amended to February 1, 2008 at the time of the hearing before the Administrative Law Judge.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Plaintiff was 44 years of age at the time of the most recent administrative hearing.  (Dkt. 8-6, Pg ID 239).  Plaintiff's relevant work history included approximately 13 years as a factory  assembler, glazer and welder.  (Dkt. 8-7, Pg ID 261).  In denying plaintiff's claims, defendant Commissioner considered left knee replacement as a possible bases of disability.  (Dkt. 8-7, Pg ID 260).

The ALJ applied the five-step disability analysis to plaintiff's claim and found at step one that plaintiff had not engaged in substantial gainful activity since February 1, 2008, the amended alleged onset date.  (Dkt. 8-2, Pg ID 30).  At step two, the ALJ found that plaintiff's osteoarthritis of both knees; status post left shoulder injury with osteoarthritis; degenerative joint disease of the thoracic and lumbosacral spine; degenerative disc disease of the lumbosacral spine; hypertension; and status post carcinoma of the right kidney were "severe" within the meaning of the second sequential step.  (Dkt. 8-2, Pg ID 31).  At step three, the ALJ found no evidence that plaintiff's combination of impairments met or equaled one of the listings in the regulations.  (Dkt. 8-2, Pg ID 32).  At step four, the ALJ found that plaintiff could not perform his previous work as a motor vehicle assembler, glazer, welder/fitter, and small engine mechanic.  (Dkt. 8-2, Pg ID 36).  At step five, the ALJ denied benefits because plaintiff could perform a significant

number of jobs available in the national economy.  (Dkt. 8-2, Pg ID 36-37).

B.    Plaintiff's Claims of Error

Plaintiff takes issue with the ALJ's assessment of plaintiff's mental impairment.  The ALJ determined that plaintiff's mental impairment was non-severe based on a variety of factors: plaintiff did not allege any mental impairment at application; he denied difficulty with memory, completing tasks, concentration, understanding, following instructions, or getting along with others; he had no history of psychiatric hospitalization or treatment; the pain clinic records showed no significant evidence of depression; and medical treatment records consistently state that the claimant denies any depression or anxiety.

According to plaintiff, the ALJ's reasoning is not valid on several grounds. First, the fact that plaintiff did not identify a mental impairment at the time of application is irrelevant according to the Revised Medical Criteria for Mental Impairments, 65 Fed.Reg. 50759, which provides that the ALJ must determine the nature and severity of an individual's mental impairment and seek additional evidence from appropriate sources even if the Commissioner was not aware of the mental impairment at the initial determination or reconsideration stage.  In addition, the denials of difficulty with memory, completing tasks, and following directions were made before plaintiff was diagnosed with kidney cancer, before his 10 foot fall onto re-bar, and he also testified that he was fired from his last job

because of the difficulty he had following directions and dealing with customers. Plaintiff also points out that while he has not been hospitalized, he has been treated for anxiety on and off since December 2005, which he first began taking Xanax.  Finally, plaintiff takes issue with the ALJ's statement that plaintiff "consistently" denied depression and anxiety.  Rather, plaintiff asserts that this "denial" exists in only two places in the record.

Plaintiff also argues that even if his mental impairment is non-severe, the ALJ failed to account for his limitations in the RFC, as required by 20 C.F.R. § 404.1545(e), which provides that the Commissioner will "consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."  Specifically, plaintiff finds fault with the ALJ's decision to reject his therapist's opinions "out of hand" based on  plaintiff's contention that the Revised Medical Criteria provides that information from non-acceptable medical sources, such as social workers can "provide very valuable information."  Plaintiff also objects to the ALJ's assignment of "little weight" to Dr. Muehleman's opinion, none of which, plaintiff contends, are germane to his objective testing of plaintiff.  The ALJ gave this opinion little weight because Dr. Muehleman was not a treating source, he was paid for his opinion, and he based his opinion on the subjective complaints of plaintiff.  Plaintiff asserts that the ALJ's reasoning is contrary to 20 C.F.R. 1527, which requires the ALJ to evaluate

every medical opinion and there is nothing that prohibits the use of a non-treating

physician.  As to the reliance on subjective complaints, plaintiff points to the

Revised Medical Criteria for Mental Impairments, which states that "We never

intended to impugn the value of psychological measures that rely on [self

reports]."  Plaintiff finds the ALJ's reliance on the payment of Dr. Muehleman to

be hypocritical given that the Commissioner pays for medical and consulting

experts.

Lastly, plaintiff argues that the ALJ did not properly rely on the vocational

expert's testimony because the ALJ did not include plaintiff's mental impairments

in his hypothetical question.  And, plaintiff says that much of the vocational

expert's testimony was inaudible and thus, this case should be remanded for that

reason.

C.    Commissioner's Motion for Summary Judgment

After reviewing all of the evidence, the ALJ determined that plaintiff had a

number of severe physical impairments and also noted that plaintiff had been

diagnosed with "affective and anxiety related disorders." (Tr. 14).  The ALJ

found, however, that the evidence did not demonstrate that these impairments,

considered both singly and in combination, caused more than "minimal limitation

in [Plaintiff's] ability to perform basic mental work activities." (Tr. 14).  The ALJ

provided several reasons for finding that plaintiff's mental impairments were not

Report and Recommendation
Cross-Motions for Summary Judgment
*Collins v. Comm'r*; Case No. 10-15000

severe.  While plaintiff argues that his mental impairments caused significant work-related limitations and challenges each of the ALJ's reasons for finding his mental impairments were not severe, the Commissioner asserts that the ALJ's reasons were well supported by and consistent with the medical evidence.

First, the ALJ noted that, as part of his disability application, plaintiff did not allege that he had any mental impairments, symptoms, or limitations.  (Tr. 14, 238).  Plaintiff reported that he took Xanax, an anti-anxiety medication, but he did so only to control his elevated blood pressure.  (Tr. 242).  Plaintiff denied having any difficulty with memory, concentration, understanding, getting along with others, completing tasks, and following instructions.  (Tr. 14, 254).  Moreover, plaintiff reported that he performed a wide range of daily activities, which did not seem indicative of any severe mental limitations.  (Tr. 249-52).  Any limitations that plaintiff alleged in his activities were attributed primarily to his physical impairments and limitations or a lack of money.  (Tr. 14, 254-55).

According to the Commissioner, other evidence also suggested that plaintiff did not have a severe mental impairment.  The ALJ noted that plaintiff had no treatment history or hospitalizations related to his mental impairments.  (Tr. 14). In fact, despite plaintiff's arguments to the contrary, his treatment records frequently indicate that he had no signs of either depression or anxiety.  (Tr. 14, 461, 462, 463, 480, 481, 531, 553, 554, 579).  In addition, when plaintiff

underwent a psychosocial evaluation during pain management treatment in August 2008, he had "no clinically significant evidence of depression" and, based on testing, was only "mildly" tense, nervous, and anxious. (Tr. 14, 440). The ALJ also noted that plaintiff was taking no medication for his alleged mental impairments in August 2009 when Dr. Muehleman evaluated him. (Tr. 14, 594). For the most part, the Commissioner posits, plaintiff does not challenge the accuracy of the ALJ's reasoning in finding his mental impairments were not severe, but instead attempts to explain them away. Regardless of plaintiff's explanations, the Commissioner asserts that the totality of the ALJ's findings shows that she was reasonable to conclude that, based on the evidence provided to her, plaintiff did not have a mental impairment that caused more than minimal work-related limitations.

Indeed, the only evidence before the ALJ that suggested plaintiff's mental impairments caused work-related limitations were opinions offered by Ms. Roberts, BS, MHP, and Dr. Muehleman. In a July 2009 letter, Ms. Roberts opined that plaintiff's "mental status precludes him from maintaining a job." (Tr. 578). In this letter, Ms. Roberts indicated that she had "only seen [Plaintiff] a total of three times" but nonetheless provided a "working diagnosis" of "major depressive disorder, single episode, severe without psychotic features." (Tr. 578). In August 2009, Dr. Muehleman provided an opinion after plaintiff's attorney referred him to

Dr. Muehleman for an evaluation "in support of his pursuit of social security disability." (Tr. 578). Dr. Muehleman diagnosed plaintiff with major depressive disorder and anxiety disorder; he opined that plaintiff had "moderate" to "marked" work-related limitations that would preclude him from maintaining full-time, competitive employment. (Tr. 595). According to the Commissioner, the ALJ discussed both of these opinions at length and provided good, well-supported reasons articulating why both opinions were worthy of "little" weight. (Tr. 15). Plaintiff challenges the ALJ's weighing of each opinion to varying degrees but the Commissioner urges the Court to reject plaintiff's arguments and conclude that the ALJ's weighing of Ms. Roberts' and Dr. Muehleman's opinions was supported by substantial evidence.

Specifically, plaintiff argues that the ALJ rejected Ms. Roberts' opinion "out of hand." Although plaintiff is correct to note that opinions from therapists and other non-"acceptable medical sources" can provide valuable insight, the ALJ found that several factors weighed against giving Ms. Roberts' opinion significant weight. (Tr. 15). Most importantly, as the ALJ noted, Ms. Roberts was not a psychiatrist or psychologist and was not qualified to give a psychiatric diagnosis. (Tr. 14, 19). Therefore, the ALJ could not give significant weight to the "working diagnosis" that Ms. Roberts used as the basis for her opinion. (Tr. 578); 20 C.F.R. § 404.1527(d)(5) ("Specialization. We generally give more weight to the opinion

of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").  Moreover, medical signs did not support Ms. Roberts' opinion or findings, as she provided little explanation and instead relied on her non-expert "lay" observations of plaintiff and his subjective complaints.  (Tr. 14, 19, 578); 20 C.F.R. § 404.1527(d)(3) ("Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion.).  The ALJ also found that Ms. Roberts' opinion was inconsistent with the other evidence in the record.  (Tr. 19). See 20 C.F.R. § 404.1527(d)(4) ("Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give that opinion.").  Furthermore, Ms. Roberts readily admitted that she began treating plaintiff only one month prior to rendering her opinion and had only seen him on three occasions.  (Tr. 14, 578).  Therefore, the Commissioner argues, she did not have a lengthy treatment relationship with plaintiff that would have made her opinion worthy of greater weight.  *See* 20 C.F.R. § 404.1527(d)(2)(ii) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").  The Commissioner urges the Court to conclude that the ALJ reasonably gave little weight to Ms. Roberts' opinion that plaintiff's mental status precluded him from working.

Plaintiff next challenges several of the ALJ's stated reasons for giving little weight to the opinion of examining physician Dr. Muehleman. Dr. Muehleman examined plaintiff in August 2009 and opined that plaintiff had moderate and marked mental limitations. (Tr. 593-95). In giving Dr. Muehleman's opinion little weight, the ALJ first noted that Dr. Muehleman saw plaintiff for "a psychological evaluation in support of his pursuit of social security disability" after a referral from plaintiff's attorney and, therefore, was not a treating physician. (Tr. 15, 593). The Commissioner acknowledges that plaintiff is correct that the agency's regulations do not prohibit the ALJ from considering the opinion of a non-treating source, but asserts that plaintiff has still failed to establish error. In pointing out that Dr. Muehleman was not a treating source, the ALJ was noting, as an initial matter, that this opinion was not entitled to "controlling weight" – a status reserved only for certain treating physicians' opinions. The Commissioner also asserts that, contrary to plaintiff's arguments, the ALJ did not err when considering the fact that Dr. Muehleman's opinion was unsupported by and inconsistent with much of the medical evidence in the record, given that under the agency's regulations, these were both relevant factors for the ALJ to consider when weighing Dr. Muehleman's opinion. 20 C.F.R. § 404.1527(d)(3), 20 C.F.R. § 404.1527(d)(4). In weighing this opinion, the ALJ also observed that plaintiff saw Dr. Muehleman "not in an attempt to seek treatment for symptoms, but rather,

through attorney referral and in connection with an effort to generate evidence for the current appeal.  Furthermore, [Dr. Muehleman] was presumably paid for the "report."  (Tr. 15, 593).  While plaintiff argues that this was not a valid reason for giving reduced weight to Dr. Muehleman's opinion, as medical sources are often paid for their opinions in Social Security cases, plaintiff fails to acknowledge that immediately after making this observation, the ALJ indicated that Dr. Muehleman's opinion was nonetheless "certainly legitimate and deserves consideration."  (Tr. 15).  According to the Commissioner, the ALJ was simply noting that "the context in which [the opinion] was produced cannot be entirely ignored."  (Tr. 15).  In the Commissioner's view, although not dispositive, the ALJ was certainly reasonable in noting the circumstances that Dr. Muehleman rendered his opinion when determining the value of this opinion.  *See Oliver v. Comm'r of Soc. Sec.*, 2011 WL 924688, at *3 (6th Cir. 2011) ("Oliver's relationship with Dr. King was extremely limited in nature, stemming from a single, post-litigation referral, and this brief relationship militates in favor of granting Dr. King's opinion limited weight.").

The Commissioner also points out that plaintiff does not challenge the ALJ's other reasons for giving Dr. Muehleman's opinion little weight.  (Tr. 15). In addition to the reasons discussed above, the ALJ also gave Dr. Muehleman's opinion little weight because it was "patently inconsistent with the other evidence

in the record" and plaintiff had never before sought mental health treatment or been hospitalized for a mental impairment. (Tr. 15). According to the Commissioner, the ALJ thoroughly discussed Dr. Muehleman's opinion and offered several good reasons for giving little weight to his opinion and plaintiff has failed to establish that the ALJ erred in weighing Dr. Muehleman's opinion.

Plaintiff also contends that the ALJ posed an improper hypothetical question to the vocational expert that did not accurately reflect his mental limitations. Although framed as a step 5 challenge, this argument is simply another challenge to the ALJ's finding that plaintiff did not have a severe mental impairment. As discussed above, the Commissioner argues that the ALJ reasonably found that the evidence did not demonstrate that plaintiff had a severe mental impairment. According to the Commissioner, the vocational expert's testimony in response to a hypothetical question accurately reflecting plaintiff's impairments and limitations provides substantial evidence supporting the Commissioner's decision. *Casey v. Sec'y of HHS*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well-established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."). As such, the Commissioner's decision, relying on the vocational expert's testimony to find that plaintiff was not disabled, should be affirmed. Plaintiff also charges that much of the vocational expert's testimony

was inaudible and, presumably, this matter should be remanded as a result.  The

Commissioner argues that, while some of the vocational expert's testimony was

inaudible, her testimony relating to the ALJ's hypothetical question that

corresponded to the ALJ's ultimate RFC finding - which was based on the medical

expert's opinion - is audible and establishes that a person with plaintiff's

limitations could perform a significant number of jobs in the regional and national

economies.  (Tr. 162-64).

## III.    DISCUSSION

### A.    Standard of Review

In enacting the social security system, Congress created a two-tiered system

in which the administrative agency handles claims, and the judiciary merely

reviews the agency determination for exceeding statutory authority or for being

arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The

administrative process itself is multifaceted in that a state agency makes an initial

determination that can be appealed first to the agency itself, then to an ALJ, and

finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is

not found during this administrative review process, the claimant may file an

action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this

statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make

credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).  When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of*

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

    B.    <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq*.).  Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R.

§ 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.

> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.

> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors."  *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.      Analysis and Conclusions

Notably, plaintiff only challenges the ALJ's decision as to his mental impairment and impact on his functionality in that respect.  As to an allegedly disabling mental impairment, the Commissioner has promulgated a special technique to ensure that all evidence needed for the evaluation of such a claim is obtained and evaluated.  This technique was designed to work in conjunction with the sequential evaluation process set out for the evaluation of physical impairments.  20 C.F.R. §§ 404.1520a, 416.920a.  Congress laid the foundation for making disability determinations when mental impairments are involved in 42 U.S.C. § 421(h), which provides:

> An initial determination under subsection (a), (c), (g), or (i) of this section that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Commissioner has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

Section 404.1520a explains in detail the special procedure and requires the

completion of "a standard document outlining the steps of this procedure." 20 C.F.R. § 404. 1520a(d). The regulation further requires the standard document to be completed and signed by a medical consultant at the initial and reconsideration levels, but provides other options at the administrative law judge hearing level. *Id*. Under this procedure, the Commissioner must first make clinical findings, as to whether the claimant has a medically determinable mental disorder specified in one of eight diagnostic categories defined in the regulations. *Merkel v. Comm'r of Social Security*, 2008 WL 2951276, *10 (E.D. Mich. 2008), citing, 20 C.F.R. Pt. 404. Subpt. P, App. 1, § 12.00A.

The Commissioner must then measure the severity of any mental disorder; that is, its impact on the applicant's ability to work. "This is assessed in terms of a prescribed list of functional restrictions associated with mental disorders." *Merkel*, at *10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C. The first area of functional restriction is "activities of daily living." This area requires the Commissioner to determine the claimant's ability to clean, shop, cook, take public transportation, maintain a residence and pay bills. *Merkel*, at *10. Under the second functional area, "social functioning," the Commissioner must determine whether the claimant can interact appropriately and communicate effectively and clearly with others. *Id*. The third functional area, "concentration, persistence, or pace," refers to the claimant's ability to sustain focused attention sufficiently long

to permit the timely completion of tasks found in work settings.  *Id*.  The final

functional area, that of "deterioration or decompensation in work or work-like

settings," refers to the claimant's ability to tolerate increased mental demands

associated with competitive work.  *Id*.

The degree of limitation in the first three functional areas (activities of daily

living; social functioning; and concentration, persistence, or pace) is rated using a

five-point scale: none, mild, moderate, marked, and extreme.  *Pauley v. Comm'r of

Social Security*, 2008 WL 2943341, *9 (S.D. Ohio 2008).  The degree of limitation

in the fourth functional area (episodes of decompensation) is rated using a

four-point scale: none, one or two, three, four or more.  *Id*.  "The last point on each

scale represents a degree of limitation that is incompatible with the ability to do

any gainful activity."  *Pauley*, at *9, citing, 20 C.F.R. § 404. 1520a(c)(4).  Ratings

above "none" and "mild" in the first three functional areas and "none" in the

fourth functional area are considered severe.  *Pauley*, at *9, citing, 20 C.F.R.

§ 404.1520a(d)(1).  If the first two functional areas receive ratings of "none" or

"slight," the third a rating of "never" or "seldom," and the fourth a rating of

"never," the Commissioner will conclude that the mental impairment is not severe,

and that it cannot serve as the basis for a finding of disability.  *Merkel*, at *10,

citing, 20 C.F.R. §§ 404.1520a(c)(1), 404.1521.

If the functional areas indicate that the mental impairment is "severe," the

Report and Recommendation
Cross-Motions for Summary Judgment
*Collins v. Comm'r*; Case No. 10-15000

Commissioner must decide whether it meets or equals a listed mental disorder. *Merkel*, at *10, citing, 20 C.F.R. § 404.1520a(c)(2). The Commissioner will determine that the claimant is disabled if the mental impairment is a listed mental disorder and at least two of the criteria have been met. *Merkel*, at *10, citing, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02, *et. seq*. If the severe mental impairment does not meet a listed mental disorder, the Commissioner must perform a residual functional capacity assessment to determine whether the claimant can perform some jobs notwithstanding his mental impairment. *Merkel*, at *10, citing, 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

The ALJ found that plaintiff was mildly limited in his activities of daily living, social functioning, and concentration, persistence, or pace. The ALJ found no evidence that plaintiff experienced episodes of decompensation. Because of the mild limitations caused by his affective and anxiety-related disorders, the ALJ concluded that they were non-severe and caused no more than a minimal limitation in plaintiff's ability to perform basic mental work activities. (Dkt. 8-2, Pg ID 31).

In this case, the undersigned concludes that the ALJ's decision is supported by substantial evidence. Dr. Muehleman's opinions were not entitled to the weight accorded to treating physicians and Ms. Robert's opinions were not supported by substantial evidence. As noted by the Commissioner, these opinions were considered and given appropriate weight. While plaintiff's anxiety disorder

is noted throughout his medical records, he often denies "depression, anxiety, hallucinations or mood swings." (Dkt. 8-8, Pg ID 431) (dated 2/27/09); (Dkt. 8-9, Pg ID 485) (dated 4/14/09). In addition, no psychiatric symptoms were noted at various other medical appointments. (Dkt. 8-9, Pg ID 555) (4/20/08); (Dkt. 8-9, 505) (4/21/09). And, "no changes in emotion" were noted at multiple appointments. (Dkt. 8-8, Pg ID 429) (3/13/08); (Dkt. 8-8, Pg ID 430) (5/7/08). Again while plaintiff's anxiety disorder is fairly well-documented, the crippling nature of mental impairment, as opined by Dr. Muehleman and Ms. Roberts, is simply not supported by the extensive treatment records in the transcript. The ALJ's decision to not give the opinions of Ms. Roberts and Dr. Muehleman controlling weight is well-supported by substantial evidence in the record and consistent with the act and regulations.

Further, the undersigned agrees with the Commissioner that the pertinent portions of the vocational expert's testimony on which the ALJ relied were sufficiently audible as evidenced by the transcript. Thus, the inaudible portions of the transcript provide no basis for finding error or remanding.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be

**AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may

Report and Recommendation
Cross-Motions for Summary Judgment
*Collins v. Comm'r*; Case No. 10-15000

rule without awaiting the response.

Date: February 21, 2012              s/Michael Hluchaniuk
                                     Michael Hluchaniuk
                                     United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on February 21, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Marsha E. Wood, Kenneth L. Shaitelman, AUSA, William L. Woodard, AUSA, and the Commissioner of Social Security.

                                     s/Darlene Chubb
                                     Judicial Assistant
                                     (810) 341-7850
                                     darlene_chubb@mied.uscourts.gov